```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
DENNY MARTIN,                                                           :
                                                                        :
                            Plaintiff,                                  :
                                                                        :            20-CV-10428 (JMF)
                 -v-                                                    :
                                                                        :            MEMORANDUM OPINION
BERKSHIRE LIFE INSURANCE COMPANY OF                                     :            AND ORDER
AMERICA,                                                                :
                                                                        :
                            Defendant.                                  :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Denny Martin was a licensed neurosurgeon and owner of several medical practices in New York who held eight disability insurance policies — five Individual Disability policies and three Overhead Expense Disability ("OED") policies — with Defendant Berkshire Life Insurance Company of America ("Berkshire"). In October 2019, Martin submitted a disability claim to Berkshire, asserting that he was unable to work due to two debilitating neurological disorders, trigeminal neuralgia and cervical myelopathy. Berkshire denied his claims and this lawsuit followed. Berkshire now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment, arguing (1) that all of Martin's claims fail because the true cause of his inability to work was a "legal disability" — namely, a September 2019 arrest in the Eastern District of New York for health care fraud and a bail release order (the "Release Order") that barred him from submitting claims to Medicaid and Medicare — not his neurological conditions; and (2) that his claims under the OED policies fail because there is no evidence that he paid any covered expenses,

let alone in the "continued operation" of his businesses, insofar as he closed up shop after his arrest. *See* ECF No. 62 ("Def.'s Mem.").[1]

Upon review of the parties' papers, the Court rejects Berkshire's first and broader argument for summary judgment on all of Martin's claims. Put simply, the argument turns on genuine disputes of material fact, including but not limited to:

- what Martin's "occupation" was — doctor or medical director — within the meaning of the policies, *see, e.g.*, *Klein v. Nat'l Life of Vt.*, 7 F. Supp. 2d 223, 227 (E.D.N.Y. 1998) ("Cases . . . that have interpreted the term 'occupation' have engaged in a fact-oriented, functional approach that looked to the professional activities in which the insured was regularly engaged at the time of the onset of the insured's disability.");[2]

- whether the Release Order prevented Martin from performing the "material and substantial duties" of that occupation, *e.g.*, ECF No. 59-6, at 15;[3] and

- even if it did, whether Martin's "factual disability" — assuming it existed at all[4] — predated the Release Order.

---

[1] On May 16, 2022, Martin pleaded guilty to health care fraud and on September 19, 2022, was sentenced principally to six months' imprisonment. *See* ECF Nos. 127-28, 136-37, *United States v. Martin*, 21-CR-67 (CBA) (E.D.N.Y.).

[2] In support of its argument that Martin's occupation was a medical director, not a doctor, Berkshire cites billing data indicating that Martin's medical work "comprised merely 1.3% of the billings in his practice." Def.'s Mem. 9. But there were many practitioners in Martin's practice. Thus, the percentage of overall billings attributable to him does not necessarily reveal what the nature of *his* job was in the relevant period. *Cf., e.g.*, *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 124-26 (2d Cir. 2000) (affirming a district court's ruling that the petitioner was occupied as a dentist, not as a medical administrator, where he spent over 90% *of his own time* seeing patients and administrative duties were peripheral to his dentistry duties); *Klein*, 7 F. Supp. 2d at 229-31 (holding that the plaintiff was occupied as a medical administrator, not a podiatrist, because the bulk of *his* work was operating and managing his podiatric clinics). Berkshire goes further and argues that Martin's occupation should be defined even more narrowly as "medical director of a medical practice *focused on a clientele insured by federally funded insurance*." Def.'s Mem. 9 (emphasis added). But Berkshire does not cite, and the Court has not found, any authority to support the proposition that "occupation" within the meaning of these policies can be defined so idiosyncratically.

[3] Citations to ECF No. 59 and its exhibits are to the page numbers automatically generated by the Court's Electronic Case Filing (ECF) system.

[4] Although Berkshire certainly casts doubt on the veracity of Martin's claim to be factually disabled, it does not dispute for purposes of this motion that a factual disability exists. *See* Def.'s

In light of these material factual disputes, summary judgment on the ground that Martin's inability to work was caused by a "legal disability" rather than a "factual disability" must be and is denied. *See* Fed. R. Civ. P. 56(a) (providing that summary judgment is appropriate only when the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *see also, e.g.*, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (reaffirming that a court's role at the summary judgment stage "is not to weigh the evidence or resolve issues of fact").

By contrast, the Court agrees with Berkshire that Martin's claims under the OED policies fail as a matter of law. To the extent relevant here, the OED policies provided for reimbursement of "Covered Overhead Expenses," defined as "the normal, necessary and customary expenses that You incur and pay in the continued operation of Your Business." *E.g.* ECF No. 59-11, at 11. "Business" is defined, in turn, as "an entity, company or professional practice in which You have an ownership interest." *E.g. id.* Giving these provisions their plain and ordinary meanings, as the Court must, *see, e.g.*, *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011), it follows that the polices were "specifically designed to pay benefits for overhead expenses incurred *while the insured continued to operate his trade or business*." *Principal Mut. Life Ins. Co. v. Toranto*, No. 95-CV-2841, 1997 WL 279751, at *5 (N.D. Tex. May 15, 1997). To the extent that Martin ceased operating his medical practice or practices, therefore, he "no longer incur[red] expenses compensable under the terms of the polic[ies]." *Id.*; *accord Wilson v. Monarch Life Ins. Co.*, 971 F.2d 312, 313 (9th Cir. 1992) (holding that a policy covering "the usual overhead expenses you have in running your office or business" did not cover expenses

---

Mem. 8 n.8; *see also, e.g.*, *White v. Continental Cas. Co.*, 9 N.Y.3d 264, 268 (2007) ("[T]he question of whether a policyholder's condition falls with the policy's definition of total disability is typically one for a jury . . . .").

after the insured sold his office or practice); *Chenvert v. The Paul Revere Life Ins. Co.*, No. 03-CV-330, 2004 WL 1739718, at *1, 4 (D. Del. Aug. 2, 2004) (holding that a policy covering expenses incurred "in the operation of your business or profession" did not cover expenses incurred after the insured's dental practice ceased operations (cleaned up)); *Paul Revere Life Ins. Co. v. Klock*, 169 So. 2d 493, 494-95 (Fla. Dist. Ct. App. 1964) (holding that a policy covering expenses "as are normal and customary in the conduct and operation of the Insured's office" did not cover any expenses after the insured had terminated his practice and another doctor had taken possession of the office).

      Here, as Berkshire contends, no reasonable jury could find that Martin's businesses "continued" to "operat[e]" in October 2019, when he filed his disability claims. Among other things, Martin submitted no fewer than *four* affidavits in a state court action affirming that he "was compelled to close [his] medical practice" as a result of the Release Order and that, as of October 2019, he had "no income." ECF No. 68-3, ¶ 6; ECF No. 68-4, ¶ 12; ECF No. 68-5, ¶ 8; ECF No. 68-6, ¶ 8. And in an email to his accountant on October 8, 2019, Martin wrote that his practice was "phasing out." ECF No. 59-28; *see also* ECF No. 59-5, at 151 (Martin, during his deposition, admitting that he was "compelled to close [his] medical practice"). Indeed, Martin himself concedes here that his entities had "stopped providing medical care to patients" at the relevant time. ECF No. 67, at 24. That concession (not to mention the evidence in the record) is fatal to Martin's claims for coverage under the OED policies. That is true even if, as Martin asserts, *see id.*, his businesses were not formally dissolved and thus continued to incur expenses that otherwise would have been covered under the policies, such as rent and interest payments on loans. *See, e.g.*, *Chenvert*, 2004 WL 1739718, at *4 & n.9 (not reaching whether the relevant expense would otherwise have qualified as "covered" as it was incurred after the insured's business ceased operations); *see also, e.g.*, *Wilson*, 971 F.2d at 313 (holding that the insured was not entitled to

4

reimbursement for otherwise covered expenses incurred in connection with the "operat[ion]" of a "collection agency to collect fees earned during his chiropractic practice"). Put simply, because Martin's businesses were no longer in "continued operation" when he incurred the expenses at issue, they are not reimbursable.

    For the foregoing reasons, Berkshire's motion for summary judgment is GRANTED with respect to Martin's claims under the OED policies, but otherwise DENIED. Unless and until the Court orders otherwise, the parties shall submit a proposed Joint Pretrial Order and associated materials (in accordance with Section 5 of the Court's Individual Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-furman) **within forty-five days of the date of this Memorandum Opinion and Order**. (The Court will schedule a trial date — or a conference to discuss a trial date — after reviewing the parties' submissions.) In the meantime, the Court is of the view that the parties should try to settle this case without the need for an expensive and risky trial. To that end, the Court directs the parties **to confer immediately** about the prospect of settlement and conducting a settlement conference before Magistrate Judge Cott (or before a mediator appointed by the Court or retained privately). If the parties agree that a settlement conference would be appropriate, they should promptly advise the Court and, if needed, seek an appropriate referral and extension of the pretrial deadlines.

    The Clerk of Court is directed to terminate ECF No. 58.

SO ORDERED.

Dated: January 31, 2023
       New York, New York

                                        JESSE M. FURMAN
                                      United States District Judge