UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DENNY MARTIN,                                                   Civil Action No. 1:20-cv-10428

         Plaintiff,

    -against-

BERKSHIRE LIFE INSURANCE COMPANY
OF AMERICA,

         Defendant.

------------------------------------------------------------X

# BERKSHIRE'S MOTION IN LIMINE

RIVKIN RADLER LLP
Kenneth C. Murphy
Jay D. Kenigsberg
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000
*Attorneys for Berkshire Life Insurance Company of America*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1
SUMMARY OF ARGUMENT .............................................................................................. 1
STATEMENT OF FACTS ..................................................................................................... 2
LEGAL ARGUMENT ............................................................................................................ 5

    I.    THIS NEWLY DISCLOSED EVIDENCE AND TESTIMONY REGARDING
        THE SAME SHOULD BE PRECLUDED UNDER RULE 37, FED. R. CIV. P. ........ 5

        A.    The Failure to Produce is Not Substantially Justified.......................................... 5

        B.    The Failure to Produce Was Not Harmless.......................................................... 6

    II.    THE SSA DETERMINATION IS NOT ADMISSIBLE UNDER THE FEDERAL
        RULES OF EVIDENCE ("FRE") ............................................................................ 8

        A.    FRE 402 and 403 Render the Evidence Inadmissible.......................................... 8

        B.    The SSA Evidence is Hearsay under Rule 802................................................... 11

    III.    PLAINTIFF SHOULD BE PRECLUDED FROM TESTIFYING AS
        AN EXPERT............................................................................................................. 11

    IV.    PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING ANY
        EVIDENCE REGARDING AMERITAS LIFE INSURANCE CORPORATION'S
        REVIEW AND APPROVAL OF MARTIN'S DISABILITY CLAIM ..................... 12

    V.    PLAINTIFF SHOULD BE PRECLUDED FROM RELYING UPON
        DOCUMENTS FIRST PRODUCED JUST PRIOR TO SUBMISSION OF
        THE JOINT PRETRIAL ORDER ............................................................................ 13

    VI.    PLAINTIFF SHOULD BE PRECLUDED FROM SUBMITTING ANY
        EVIDENCE WITH RESPECT TO A CLAIM OF CATASTROPHIC
        DISABILITY ............................................................................................................ 13

CONCLUSION....................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. First Unum Life Ins. Co.*,
  2022 WL 30918 (Mid. Dist, Fla. 2022) ................................................................... 11

*Cleveland v. Policy Mgmt. Sys. Corp.*,
  526 US 795, 119 S. Ct. 1597 (1999) ....................................................................... 10

*Howard v. Nucor-Yamato Steel Co.*,
  No. 3:14 CV 00202 JLH, 2015 US Dist. LEXIS 132164, 2015 WL 5634526
  (E.D. Ark. Sept. 24, 2015) ...................................................................................... 10

*Jones v. Standard Ins. Co.*,
  2013 WL 5549779 (Ill. E.D. 2013) ........................................................................... 9

*McElgunn v. Cuna Mut. Group*,
  2009 U.S. Dist. LEXIS 46498 (West Dist. S.D. 2009) ........................................... 11

*Parker v. Reliance Std. Life Ins. Co.*,
  2000 U.S. Dist. LEXIS 784 ..................................................................................... 11

*Richmond v. Gen. Nutrition Ctrs., Inc.*,
  2012 U.S. Dist. LEXIS 32070 (S.D.N.Y. Mar. 9, 2012) ........................................... 6

*Roach v. Hughes*,
  No. 4:13-CV-00136-JHM, 2016 US Dist. LEXIS192835, 2016 WL 9460306
  (W.D. Ky. Mar. 9, 2016) ........................................................................................... 9

*Rojo v. Deutsche Bank*,
  No. 06-cv-13574, 2009 U.S. Dist. LEXIS 110848, – 16 (S.D.N.Y. Oct. 30,
  2009) ......................................................................................................................... 7

*Sabo v. Fiskars Bands Inc.*,
  No. 2:12-CV-00503-EJL, 2015 US Dist. LEXIS 182643, 2015 WL 12750276
  (D. Idaho Dec. 4, 2015) .......................................................................................... 10

*Wilshire Ins. Co. v. Yager*,
  No. CV-16-00192-TUC-JAS, 2019 US Dist. LEXIS 116258 (D. Ariz. July 12,
  2019) ......................................................................................................................... 9

## PRELIMINARY STATEMENT

Defendant Berkshire Life Insurance Company of America ("**Defendant**" or "**Berkshire**") respectfully submits this Memorandum of Law in support of (1) its motion in limine for an Order precluding plaintiff from submitting evidence at trial with respect to the Social Security Administration ("**SSA**") Retirement, Survivors, and Disability Insurance Notice of Award; and (2) an Order of the Court directing Plaintiff not to testify in his own behalf as an expert.

## SUMMARY OF ARGUMENT

On May 25, 2023, a year after discovery had closed and well after depositions were completed, Denny Martin ("**Martin**" of "**Plaintiff**") produced documents regarding his award of monthly social security disability benefits beginning March 2020. The untimely documents produced include the SSA Notice of Award, dated August 9, 2022 (Kenigsberg Dec Ex A);[1] the SSA Hearing Transcript dated January 6, 2022 ("**1/6/2022 Tr.**") (*Id*. Ex B), the SSA Hearing Transcript dated April 5, 2022 ("**4/5/2022 Tr.**") (*Id.* Ex C); a May 5, 2022 SSA request for professional opinion directed to Mednick Associates LLC ("**Mednick**") (*Id.* Ex D), the curriculum vitae of Jason H. Lin, M.D. of Mednick (*Id.* Ex E); the Medical Statement completed by Dr. Lin (*Id.* Ex F), and Plaintiff's surrender of license stipulation (*Id.* Ex G). [2]

The SSA Evidence was not produced previously by Martin (despite the fact that, for example, the transcripts were generated in hearings that were undertaken *during the pending discovery in this matter*). As such, this information is highly prejudicial and should therefore be precluded. Moreover, and perhaps more importantly, the probative value of the SSA evidence is substantially outweighed by the prejudice – not just because of the late production, but also because it will lead to confusion of the issues, mislead the jury and is the result of a different proceeding

---

[1] "Kenigsberg Dec" refers to the declaration of Jay Kenigsberg, Esq., dated June 19, 2023.
[2] Collectively, all of this new evidence will be referred to as the "**SSA Evidence**".

involving entirely different witnesses and issues to which Defendant was not a party. Furthermore, the SSA evidence is based on a wholly incomplete record and a different legal standard than will be applied at this trial. The evidence and any arguments based thereon should therefore be precluded.

## STATEMENT OF FACTS[3]

In this breach of contract action, it is Plaintiff's burden to demonstrate that the terms and conditions of the disability policies are satisfied, and benefits are due. In this regard, the Court is reminded that the insurance policies at issue define "Total Disability or Totally Disabled" to mean that, "solely due to Injury or Sickness, [Martin is] not able not able to perform the material and substantial duties of [his] Occupation." Thus, the jury in this case must determine disputed issues of fact as they apply to the specific terms of Plaintiff's insurance Policies.

In the main, the focus of Martin's breach of contract claim will be: (1) what were the material and substantial duties of plaintiff's Occupation? (2) what was Martin's Occupation? (3) Did Martin have a "Injury or Sickness"? (4) If so, did that "Injury or Sickness" prevent him from undertaking the "material and substantial" duties of his Occupation as of October 1, 2019? (5) Did Plaintiff qualify as "Totally Disabled" under the terms of the policies? And (6) if not, did the Plaintiff qualify as Residually Disabled under the terms and conditions of the policies?

In addition (and as addressed in Berkshire's motion for summary judgment), Berkshire will seek to argue to the jury that even if, at some point, Mr. Martin became factually disabled, a legal disability (Mr. Martin's Release Order after his arrest) preceded any factual disability and therefore precludes him from recovering benefits under the policies.

None of the foregoing was at issue in the SSA determination.

---

[3] Having presided over this matter for several years, including having rendered a summary judgment decision, the Court is presumed to have familiarity with the facts.

The recently provided SSA Notice of Award specifically states that: "[The Social Security Administration] found that [Martin] became disabled under [their] rules on October 1, 2019." (Kenigsberg Dec Ex A at p. 13935). Significantly, the SSA's rules are not set forth in the Notice of Award. The SSA Award further states that "We based our decision on information you gave us." (*Id.* at p. 13938). That information is not detailed in the award.

On an issue that is contested in this very litigation, the January 6 hearing transcript notes that the Administrative Law Judge ("**ALJ**") stated on the record that plaintiff was always a practicing doctor and never doing just administrative tasks alone. (Kenigsberg Dec. Ex B, 1/6/2022 Tr. pp. 21 – 24). No evidence, however, is cited in support of this statement.

The April 5, 2022 hearing transcript before ALJ, Lori Romeo further notes: (1) that the local SSA office initially denied the claim for disability benefits and, upon reconsideration, denied it again (Kenigsberg Dec. Ex C, 4/5/22 Tr. p. 6); (2) that the April 5 hearing was a continued hearing of the claim (*id.*); (3) that the initial hearing of January 6, 2022 was not completed and the original judge, ALJ Gitel Reich, was not available to render a decision (*id.*); (4) that Judge Reich, "was having problems with this case;" (*id.* at p. 36); (5) that the Office of the Inspector General ("**OIG**") was "looking at [Martin's] file" (*id.*); (6) that the SSA matter was based on a 1,245-page record (*id.* at p. 14); and (7) that additional unidentified documents were added to the record at that hearing (*id.* at p. 7).

Moreover, the transcript indicates that vocational experts were called at both hearings. None of the vocational expert's reports, notes, or records, however, were produced.

Perhaps the most notably, the following statements of ALJ Romeo were found in the SSA Evidence:

> THE COURT: You are aware that one of the problems, doctor, in this case, is that you were observed by the – by the Office of the Inspector General after an

> IME, walking around, not using your cane, calling a taxi. And that has caused, -- unfortunately, that has caused some problems in trying to rule on your case. You are aware of that; right?
>
> …
>
> THE COURT: I – I could understand why Judge Reich was having problems with this case, counselor. There's a lot of odd issues in this case that were pointed out by the medical consultants when they reviewed the file. There's also the Office of the Inspector General which is looking at this file. There's a – there's a federal court case because there had – because there is an allegation of – of, I presume fraud. So in terms of whether or not we could accept the testimony of the claimant is – is problematic. Again, I'm not using that, but I just want to tell you that I could understand why the DDS might have been concerned… like I said, the OIG investigation did see him walking around – did not seem to have the sort of problems that he's testified to at my hearing today.

(*Id.* at p. 12-13, 36-37).

Ultimately, according to the transcript, ALJ Romeo referred Plaintiff's medical records to a neurologist at Mednick for review. There is no information regarding what documentation the evaluating physician at Mednick considered and, most importantly, what if any consideration was given to the OIG investigation referenced in the hearing.[4]

---

[4] It is entirely unclear to Berkshire if this is the same OIG investigation related to Martin's federal criminal proceeding or something different. While the undersigned does not have specific knowledge of the organizational structure of the SSA, a simple review of the SSA website reveals that there is a separate Office of the Inspector General for that agency that "is directly responsible for meeting the statutory mission of promoting economy, efficiency and effectiveness in the administration of Social Security Administration (SSA) programs and operations and to prevent and detect fraud, waste, abuse, and mismanagement in such programs and operations. To accomplish this mission, the OIG directs, conducts and supervises a comprehensive program of audits, evaluations and investigations, relating to SSA's programs and operations. OIG also searches for and reports systemic weaknesses in SSA programs and operations, and makes recommendations for needed improvements and corrective actions." https://www.ssa.gov/org/orgOIG.htm#:~:text=The%20Office%20of%20the%20Inspector%20General%20(OIG)%20is%20directly%20responsible,and%20mismanagement%20in%20such%20programs

**LEGAL ARGUMENT**

**I.   THIS NEWLY DISCLOSED EVIDENCE AND TESTIMONY REGARDING THE SAME SHOULD BE PRECLUDED UNDER RULE 37, FED. R. CIV. P.**

While the evidence and standards may be different between this breach of contract action and the SSA proceeding (discussed further below), the recently disclosed information cuts to the core of the claims in this case, i.e., whether or not Martin is disabled. Certainly, Plaintiff seeks to use the SSA determination to buttress his claims before the jury here ("if an ALJ determined I am disabled, I must be telling the truth here"). Plaintiff had an obligation to disclose this information pursuant to Rule 26, Fed. R. Civ. P.

Pursuant to Rule 37(c)(1), Fed. R. Civ. P.:

(1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless

**A.   The Failure to Produce is Not Substantially Justified**

There certainly can be no substantial justification for Plaintiff's failure to share the SSA Evidence during the course of discovery. Martin was deposed on numerous occasions, thousands of pages of discovery were disclosed and Plaintiff was well-aware of the issues at the center of this litigation. Notably, Plaintiff was so uncooperative with the discovery process that in response to a properly served third-party subpoena on his divorce counsel (to obtain documents that Plaintiff should have properly secured and produced himself), Berkshire was forced to oppose a motion to quash that this Court specifically noted was "meritless." (ECF No. 31). Thereafter, Berkshire was even forced to do a motion to compel to procure production of those very same documents the Court ordered produced. (ECF No. 37). Separate from the divorce proceeding materials, Berkshire was forced to seek Court intervention to obtain additional documents from Martin. (ECF

No. 39). Nevertheless, despite all of that wrangling, and fully aware of his discovery obligations, Martin never produced the SSA Evidence.

B. **The Failure to Produce Was Not Harmless**

Plaintiff produced the SSA Evidence on May 25, 2023, approximately one year after the discovery deadlines in this case had passed and approximately nine months after Berkshire filed its motion for summary judgment on August 3, 2022. Plaintiff provides no excuse for the failure to produce the SSA Evidence in a timely manner while discovery was pending, nor does Plaintiff offer any explanation why Berkshire was not advised of the SSA hearings which were conducted while Plaintiff's deposition was pending. Plaintiff's deposition was taken over a four day period commencing on March 8, 2022, and it continued on March 28, 2022, April 13, 2022, and April 28, 2022. The SSA hearings – January 6, 2022 and April 5, 2022 – took place during this period.

Plaintiff was aware that the SSA proceedings and the records were subject to production in this matter. In this regard, Berkshire's Request for Production of Documents to Plaintiff, dated April 1, 2021, requested, among other things, the following:

> ***31. All documents relating to whether you are eligible for, have applied for, or have received any type of social security benefits, as well as all documents evidencing the application claim process, and receipt of any such benefits.***

Plaintiff's response to this request, dated May 14, 2021, raised several general objections and stated that, "non-privileged documents responsive to this Request, if any, that are within Plaintiff's possession, custody, or control, will be produced." That obligation was continuing.

When considering whether to exclude evidence pursuant to Rule 37, courts in this circuit consider "(1) a party's explanation for the failure to comply with the Federal Rules, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party of having to prepare to meet the new evidence, and (4) the possibility of a continuance." *Richmond v. Gen. Nutrition Ctrs., Inc.*, 2012 U.S. Dist. LEXIS 32070, at *21 (S.D.N.Y. Mar. 9, 2012). Based on these

6

considerations, Plaintiff's failure to timely produce the SSA Evidence is neither justified nor harmless.

As a result of Plaintiff ignoring its continuing discovery obligation, Berkshire was deprived of the opportunity to obtain and review the SSA record (tat the very least, 1,245 pages of documents on the disability issue) or to examine any witnesses responsible for creating portions of that record. As mentioned above, there are numerous issues surrounding the SSA determination, including the original ALJ's problems with the case and the so-called "odd issues" pointed out by medical providers. Most significantly, Berkshire was prevented from reviewing the record and examining other witnesses with regard to the OIG's interest in Martin's SSA file or the statement by ALJ Romeo that she "could understand why the DDS might have been concerned." If Defendant had known about these allegations such as observations of Martin being potentially surveilled by OIG and conducting himself in a manner inconsistent with his claims of disability, Berkshire would have pursued that evidence. Such evidence is directly related to the issues at trial and is relevant to Martin's credibility.

Accordingly, Plaintiff should be precluded from offering into evidence the SSA Notice of Award and any other evidence related thereto, as it was not produced in a timely manner and Defendant was prevented from pursuing potential valuable information that was contained therein. See, *Rojo v. Deutsche Bank*, No. 06-cv-13574, 2009 U.S. Dist. LEXIS 110848, at *13 – 16 (S.D.N.Y. Oct. 30, 2009) (witness precluded from testifying on points supported by unproduced documents, where testimony would prejudice opposing party because the documents showed a witness's knowledge on points not covered in witness's deposition, and which adversary could not have known about absent full document production).

## II. THE SSA DETERMINATION IS NOT ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE ("FRE")

### A. FRE 402 and 403 Render the Evidence Inadmissible

This proceeding concerns the specific language of the disability policies at issue and Plaintiff's efforts to prove, due solely to an Illness or Injury, he is unable to perform the material and substantial duties of his Occupation. That is what the jury will be tasked with evaluating. Plaintiff will testify in his own behalf and call expert physicians who have evaluated him to support his claim. Defendant, on the other hand, will test Plaintiff's claims by relying upon its own expert, who has also examined Plaintiff, as well as surveillance videos, travel records, emails, certain past treating medical professionals (as fact witnesses) and other third-party witnesses.

Indeed, as the Court is aware from the summary judgment motions (and a general review of the Joint Pre-Trial Order), the jury will be provided with substantial information at the trial of this matter to make its own determination whether Plaintiff is entitled to disability payments under the policies at issue. The fact that, on the record before it, the SSA determined that Plaintiff qualified for disability payments under federal law is, simply stated, irrelevant and invades the province of the jury's role in this matter.

Significantly, the SSA proceeding appears to have amounted to (i) the submission by Plaintiff of approximately 1,245 pages of materials that he (and his counsel) decided supported his disability claim, (ii) an interview by an ALJ and (iii) a review by a medical professional *based solely on the medical records that Plaintiff provided to the SSA*. (Kenigsberg Dec Ex A at Martin 13924-13930). Defendant was not a party to that proceeding or offered the opportunity to present the evidence it has relied upon in denial of the Plaintiff's disability claim. In effect, it was a one-sided tribunal, the results of which Plaintiff now seeks to use to pursue his burden of proof in this matter. The evidence irrelevant under Rules 402, Fed. R. Evid., and, even if it is deemed relevant,

the probative value is substantially outweighed by unfair prejudice, a risk of confusing the issues and will mislead the jury.

There is authority for precluding this sort of evidence in the same context based on Rules 402 and 403. In *Jones v. Standard Ins. Co.,* 2013 WL 5549779 (Ill. E.D. 2013), as here, Plaintiff Jones sued his insurance carrier for disability benefits under an insurance policy. Jones sought to admit evidence that he was granted disability benefits by the SSA in support of his claims. In denying the use of the SSA determination at the motion in limine stage, the Court held:

> To admit the SSA determination would require an explanation of the various SSA standards for determination of a disability and, arguably, the admission of the entire SSA record which does not in all respects conform with the Rules of Evidence. There could easily be duplication and confusion. This court will follow the decisions which decline to admit such determinations in a jury fact-finding proceeding in which presenting the evidence will result in unfair prejudice and confusion.

*Id.* at *4-5. The logic applied by the Court in the *Jones* should similarly be applied here. Any use of the SSA Evidence would require an explanation of the process before the SSA, the different standards and highlighting of the different evidence presented. This threatens to confuse the jury and paint a misleading picture. This jury is required to undertake a *de novo* review of the evidence presented in light of the insurance policies at issue.

While there is not a great deal of decisional authority on this specific issue, there is ample precedent for the principal that administrative determinations in circumstances where a factfinder is tasked with a *de novo* review is unreliable and prejudicial "as it is not a traditional adversarial proceeding" and would unduly influence the jury as it comes from a federal administrative law judge *Wilshire Ins. Co. v. Yager*, No. CV-16-00192-TUC-JAS, 2019 US Dist. LEXIS 116258, at *22-23 (D. Ariz. July 12, 2019). *See also, Roach v. Hughes*, No. 4:13-CV-00136-JHM, 2016 US Dist. LEXIS192835, 2016 WL 9460306, at *3-4 (W.D. Ky. Mar. 9, 2016) ("An SSA disability

9

determination is of dubious probative value . . . The lack of a meaningful adversarial process with respect to the cause, existence, and extent of a plaintiff's alleged disability renders the SSA's conclusions on that issue unreliable."); *Sabo v. Fiskars Bands Inc.*, No. 2:12-CV-00503-EJL, 2015 US Dist. LEXIS 182643, 2015 WL 12750276 at *4 (D. Idaho Dec. 4, 2015) (excluding ALJ decision in an SSA proceeding because the "determination made in the social security proceeding was subject to different standards and requirements specific to that proceeding," the "decision is irrelevant to the issues before the jury," the decision "would be unduly prejudicial and confusing to the jury" under Fed. R. Evid. 402, 403, and the SSA decision goes to "the ultimate question the jury in this case must decide based upon the evidence admitted at trial."); *Howard v. Nucor-Yamato Steel Co.*, No. 3:14 CV 00202 JLH, 2015 US Dist. LEXIS 132164, 2015 WL 5634526, at *3 (E.D. Ark. Sept. 24, 2015) ("That the SSA determined [plaintiff] to be under a disability as that term is defined in the SSA disability laws adds nothing to the medical records upon which that determination is based.").

The differences in administrative standards and practices and private contractual disputes was highlighted by the Supreme Court in *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 US 795, 804-05, 119 S. Ct. 1597, 1603 (1999). While the Supreme Court was dealing with determinations under the ADA, it addressed a situation under the SSA that is consistent with the issue here. The Supreme Court recognized that in the SSA setting: "The presumption embodied in these questions [can claimant perform certain tasks] . . . grow out of the need to administer a large benefits system efficiently. But they inevitably simplify, eliminating consideration of many differences potentially relevant to an individual's ability to perform a particular job. Hence, an individual might qualify for SSDI under the SSA's administrative rules yet, due to special individual circumstances, remain capable of 'performing the essential functions' of [her] job. Further, the SSA sometimes grants

SSDI benefits to individuals who not only can work but are working." *Id.* Accordingly, even the Supreme Court has recognized the potential for jury confusion and a clear basis for prejudice in a civil trial when the plaintiff's abilities to perform a job are squarely at issue.

Finally, in those cases where such evidence has been deemed admissible, it was evidence available to the Defendant in advance of the determination to deny coverage and relevant to that determination. That was not the case here as the information has only recently been disclosed and it was unavailable when the decision to deny Martin's claim was made by Defendant. *See, e.g., Allen v. First Unum Life Ins. Co.,* 2022 WL 30918 (Mid. Dist, Fla. 2022) (holding that SSA determination was relevant because it was known years earlier and reviewed in the denial of coverage determination); *Parker v. Reliance Std. Life Ins. Co.,* 2000 U.S. Dist. LEXIS 784 (ERISA administrative claim where Court determined that the SSA determination was relevant for the Court's consideration in determining if denial of benefits under an ERISA plan was proper); *McElgunn v. Cuna Mut. Group,* 2009 U.S. Dist. LEXIS 46498, *26 (West Dist. S.D. 2009) (Court held SSA determination was relevant where Plaintiff was claiming Defendant was aware of the determination and still denied benefits under the policy).

  **B.**  **The SSA Evidence is Hearsay under Rule 802**

In addition, the SSA Evidence is being offered for the truth of the matter asserted – to support Plaintiff's claim that he is disabled. Under FRE 802, hearsay is not admissible unless there is an exception under the FRE. No relevant exception applies.

**III.**  **PLAINTIFF SHOULD BE PRECLUDED FROM TESTIFYING AS AN EXPERT**

Plaintiff has a medical degree and was, at one time, a practicing physician. As such, a simple review of his testimony at his deposition sessions reveals a repeated effort to inject his professional opinion of his medical condition into the record. (for example, see April 13, 2022, p. 236:22-237:9; and p. 239:24-240:2-10; April 18, 2022, p. 71:15-74:8.) (Kenigsberg Dec. Ex H).

This is improper. Plaintiff is certainly entitled to call experts to opine on his diagnosis and his purported disability. And Plaintiff is certainly entitled to testify to his physical condition and limitations. However, he should not be permitted to testify as yet a third expert on his own behalf. Notably, Plaintiff was never designated as an expert.

IV. **PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING ANY EVIDENCE REGARDING AMERITAS LIFE INSURANCE CORPORATION'S REVIEW AND APPROVAL OF MARTIN'S DISABILITY CLAIM**

Plaintiff had disability policies with insurers other than Berkshire, including Ameritas Life Insurance Corporation ("Ameritas"). Ameritas approved Plaintiff's disability claim. If the jury were to hear evidence of the Ameritas claim review or approval of Plaintiff's disability claim submitted to Ameritas, this would result in unfair prejudice to Berkshire. As such, any evidence of the Ameritas claim review and determination should be precluded under FRCP Rule 403 and FRCP Rule 802.

This conclusion rests on several grounds. There is no evidence in this case regarding the manner of the Ameritas claim review, what evidence was considered during that review, or what facts or business decisions Ameritas considered when reaching its claim determination. In addition, there is no evidence regarding the Ameritas policies at issue. The terms and conditions of those policies, and how such policies may have differed from the Berkshire policy language at issue in this case, will not be before the jury. No Ameritas policies were produced during discovery, and we have not heard testimony from any Ameritas witnesses. If the jury were to hear any evidence regarding the Ameritas claim, this will confuse the jury, as they would lack any evidentiary basis to distinguish between the Berkshire review process and the Ameritas review process, the facts relied upon by the insurers, or the policy language at issue. If Plaintiff testified regarding the approval by Ameritas, this would further mislead the jury into believing that

Plaintiff's claim with Berkshire was either improperly handled or that Berkshire reached the wrong result in denying Plaintiff's claim for disability benefits.

In view of the lack of evidence concerning the Ameritas claim procedure and determination in this case, the Court should exclude any such evidence under FRCP Rule 802. In addition, such evidence is not relevant with respect to Berkshire's determination and should be excluded under FRCP 403, as the probative value of such evidence is substantially outweighed by the danger of unfair prejudice to Berkshire and the risk of confusing or misleading the jury.

V. **PLAINTIFF SHOULD BE PRECLUDED FROM RELYING UPON DOCUMENTS FIRST PRODUCED JUST PRIOR TO SUBMISSION OF THE JOINT PRETRIAL ORDER**

Plaintiff produced additional documents as a supplemental production bates stamped MARTIN013962-MARTIN014231. An email advising of this production was received on June 28, 2023 and the link to the documents was received June 29, 2023. Plaintiff's production is late under F.R.C.P. Rule 37, and Plaintiff should be precluded from relying on said documents.

VI. **PLAINTIFF SHOULD BE PRECLUDED FROM SUBMITTING ANY EVIDENCE WITH RESPECT TO A CLAIM OF CATASTROPHIC DISABILITY**

According to the complaint the Plaintiff was seeking benefits because of an alleged total disability and did not set forth in the complaint any allegations regarding a so called catastrophic disability. As such Plaintiff should be precluded from submitting evidence with respect to an alleged catastrophic disability.

# CONCLUSION

For all the reasons set forth herein, Berkshire asks the Court to grant this motion in its entirety.

Dated: Uniondale, New York
June 30, 2023

                                          Respectfully Submitted,

                                          **RIVKIN RADLER LLP**

                                          By: /s/ *Kenneth C. Murphy*
                                          Kenneth (Casey) Murphy
                                          Jay Kenigsberg
                                          926 RXR Plaza
                                          Uniondale, New York  11556
                                          Tel: (516) 357-3000
                                          Fax: (516) 357-3333
                                          Email: casey.murphy@rivkin.com
                                          Attorneys for Defendant
                                          Berkshire Life Insurance Company of America

7565110v2